Filed 12/20/16  (unmodified opn. attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| TIDWELL ENTERPRISES, INC. et al., | C078665 |
| Plaintiffs and Appellants, | (Super. Ct. No. 14CV40000) |
| v. | MODIFICATION OF OPINION AND DENIAL OF PETITION FOR REHEARING |
| FINANCIAL PACIFIC INSURANCE COMPANY, INC., | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Calaveras County, Thomas A. Smith, Judge.  Reversed.

Borchard & Callahan, Michael G. Dawe for Plaintiffs and Appellants.

Gordon & Rees, Arthur Schwartz and Randall P. Berdan for Defendant and Respondent.

THE COURT:

The opinion of this court filed November 29, 2016, in the above entitled case is modified as follows:

On page 8, delete the final sentence of the first full paragraph (beginning, "Because there was . . . .") and insert the following sentence in its place:

1

Because Financial Pacific did not eliminate all possibility of coverage in the State Farm action, Financial Pacific was not entitled to summary judgment on the ground that it did not owe Tidwell a duty of defense.

The petition for rehearing is denied. This modification does not change the judgment.

BY THE COURT:


        /s/
Robie, J.



        /s/
Nicholson, Acting P. J.



        /s/
Hoch, J.

Filed 11/29/16 (unmodified version)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| TIDWELL ENTERPRISES, INC. et al., | C078665 |
| Plaintiffs and Appellants, | (Super. Ct. No. 14CV40000) |
| v. | |
| FINANCIAL PACIFIC INSURANCE COMPANY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Calaveras County, Thomas A. Smith, Judge. Reversed.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Kristin F. Godeke for Plaintiffs and Appellants.

Gordon & Rees, Arthur Schwartz and Randall P. Berdan for Defendant and Respondent.

1

A fire destroys a house. The homeowner's insurer agrees to pay for the damages resulting from the fire, then sues the contractor who installed the fireplace several years earlier, claiming negligence. The contractor tenders defense of the action to its liability insurer, asserting that even though the fire occurred after the relevant policy periods ended, there is a possibility of coverage because the fire may have been the result of ongoing damage to the wood in the chimney chase[1] during one or more policy periods due to the exposure of that wood to excessive heat from the chimney every time a fire was burned in the fireplace. Under the standard language in a commercial general liability policy, does the liability insurer have a duty to defend the contractor? For reasons we will explain, we say "yes." Accordingly, we will reverse the judgment here that concluded otherwise.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Financial Pacific Insurance Company, Inc. (Financial Pacific) provided general liability insurance coverage to plaintiffs Greg Tidwell, Tidwell Enterprises, Inc., and Tidwell Enterprises Fireplace Division (jointly, Tidwell) between March 2003 and March 2010. Although the specific policy forms varied over the years, the provisions that are relevant here were the same throughout all of the forms. Under the policies, which appear to be standard commercial general liability policies, Financial Pacific agreed to pay sums that Tidwell became "legally obligated to pay as damages because of . . . 'property damage' " caused by an "occurrence" if the "property damage" occurred during the policy period. The policies defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies further defined "property damage" as "[p]hysical injury to tangible property,

---

**1**      The chimney chase is the structure through which the chimney pipe runs.

2

including or resulting in loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."

In 2006 or 2007, Tidwell participated in the construction of a house in Copperopolis by installing a fireplace. Apparently, Tidwell's contract included the fabrication and installation of a custom "termination top" for the fireplace designed by the project architect, although Greg Tidwell later testified at a deposition that his employees did not install the top on the chimney.

On November 11, 2011 -- 20 months after the end of the last policy period for Tidwell's general liability coverage with Financial Pacific -- the house in Copperopolis, owned by Kendall Fox, was damaged by fire. At the time, Fox was insured by State Farm General Insurance Company (State Farm).

On November 29, 2011, State Farm's attorney sent a letter to Tidwell notifying Tidwell of the fire. The letter stated that "the cause of the fire may be related to the manufacture, design or installation of the fireplace, chimney chase, residence structure or involved component parts" and expressed the understanding that Tidwell might have been involved "with the construction elements of the home specifically related to the area of the fireplace, chimney chase and residential structure." The following day, Tidwell forwarded State Farm's letter to Financial Pacific.

On December 31, 2011, Financial Pacific sent a letter to Tidwell acknowledging receipt of Tidwell's claim and agreeing to investigate the claim subject to a reservation of rights. At some point thereafter, Financial Pacific received a fire investigation report dated January 17, 2012 that was prepared for State Farm's attorney by Dale Feb of F.I.R.E. Associates. Feb concluded that the fire was caused by the installation of the "unlisted shroud located at the top of the chimney chase." In Feb's opinion, the unlisted shroud prevented the fireplace from drafting properly, which "resulted in the overheating of the fireplace and heat transfer to the surrounding wood framing members." According

3

to Feb, "[t]he overheating of this fireplace resulted in the ignition of the surrounding framing members at the sides, top and bottom of this fireplace."

On February 2, 2012, State Farm sued Tidwell for negligence, alleging that Tidwell had negligently installed the fireplace system in the Fox home and that Tidwell's negligence was the proximate cause of the fire, which resulted in damage to Fox's property. State Farm alleged that it was seeking subrogation losses pursuant to the insurance policy it had issued to Fox, under which State Farm was "required to, and will pay damages . . . to and on behalf of its insured, as a direct and proximate result of" Tidwell's negligence.

At some point, Financial Pacific retained O'Connor Engineering, Inc. to inspect the fire scene. In a report dated May 22, 2012, O'Connor reported to Financial Pacific that the chimney assembly had been modified by the use of the customized termination top that Tidwell fabricated and installed at the direction of the general contractor following a design by the architect. O'Connor concluded that the termination top posed a fire hazard because it restricted the air flow in the chimney, which would "result in increased operating temperature of the flue vent sections and the fireplace." O'Connor could not rule out the installation of the custom terminal top as a cause of the fire.

In June 2012, Financial Pacific sent a letter to Tidwell declining Tidwell's tender of the defense of the State Farm action based on Financial Pacific's conclusion that no potential for coverage existed. Financial Pacific concluded that "the fire started as a result of the chimney shroud which did not allow free movement of air" but further concluded that "the property damage occurred on November 11, 2011 the date of the fire at issue, long after Financial Pacific's policies had expired," and "for coverage to exist, the property damage must take place during the policy period."

In August 2012, Tidwell's attorney wrote to Financial Pacific, disagreeing with the insurer's denial of a duty to defend Tidwell in the State Farm action. Among other things, Tidwell's attorney asserted that "[t]he construction of the fireplace and the

4

continuous burning of fires therein create[d] the potential for continuous and repeated exposure to the same general harmful conditions.  The policy definition of 'occurrence' does not rule out the possibility that damage could have been occurring prior to the final fire that burned the house."  Referring to the reports Financial Pacific had already received, Tidwell's attorney further asserted that "[t]he fact that the installation of the termination top could have led to continuous and progressive damage as a result of each fire in the fireplace running too hot fits squarely within the definition of an 'occurrence.' "  The attorney concluded by asserting that Financial Pacific could not "at this point in the case, based on the allegations and expert reports, conclude that there was no continuous and progressive *property damage* occurring during the policy period.  There could have been occurrences of property damage long before the fire manifested itself on the date provided in the Complaint.  As you cannot conclude there was a lack of *property damage* during the policy period and you have no other basis for further denying the duty to defend the insured against the above-referenced complaint, it is clear that there has been an ongoing duty in Financial Pacific to have mounted and funded the insured's defense since the initial tender of defense."

In September 2012, Financial Pacific's attorney responded, asserting (among other things) that the insurer had no duty to defend Tidwell because "the only 'property damage' alleged and being sought in State Farm's Complaint occurred on November 11, 2011, the date of the fire."

In April 2013, Tidwell's attorney informed Financial Pacific's attorney that Tidwell was "in the process of obtaining additional expert reports that we believe will continue to support our position that the ongoing use of the fireplace during the policy period in its allegedly defective condition created occurrence of damage to the fireplace that culminated in the November 11, 2011 fire."  Thereafter, in July 2013, Tidwell's attorney sent Financial Pacific a report prepared by a retained expert, Randy Brooks, who had concluded that the repeated exposure of the combustible materials framing the

5

chimney chase to the excessive heat from every fire burned in the fireplace since it was installed "would begin [to] lower the ignition temperatures of that combustible framing to in some cases below 250 degrees. This structure fire would not happen in most cases with the first or a single fire [but] rather would take a number of fires over several years since 2006 to complete pyrolysis and cause ignition."[2] Thus, it was Tidwell's position, based on Brooks's opinion, that "successive fires over the course of six years (during five of which Tidwell was insured by Financial Pacific) each caused damage to the chimney system and lowered the point of combustion which eventually resulted in the main fire damage to the Fox home."

In September 2013, Financial Pacific's attorney once again responded to Tidwell's attorney, affirming the insurer's denial of Tidwell's tender of the defense in the State Farm action. Financial Pacific's attorney asserted that "[c]overage under the Financial Pacific policies applies to 'property damage' during the policy period caused by an 'occurrence' " and argued that the insurer's policy did "not provide coverage for injury sustained after the expiration of the policy period as the result of a condition created during the policy period."

In April 2014, Tidwell commenced the present action by filing a complaint against Financial Pacific for declaratory relief, breach of contract, and tortious breach of contract. Essentially, Tidwell alleged that Financial Pacific had breached its insurance contracts with Tidwell by refusing to pay Tidwell's defense costs in the State Farm action because it was possible there was "a continuing *occurrence of property damage* allegedly caused by TIDWELL during the operative period of the Policies, which *continuing occurrence* led inexorably and inextricably to the eventual total destruction of the Fox Residence." Tidwell alleged on information and belief "that numerous fires were repeatedly set in the

---

[2] "Pyrolysis" is "chemical change brought about by the action of heat." (Merriam-Webster's Coll. Dict. (11th ed. 2003) p. 1014, col. 2.)

6

fireplace at the Fox Residence during the period covered by the Policies, and that each of those fires actually caused 'physical injury to tangible property,' 'property damage' as defined in the Policies, by causing, *inter alia*, a chemical decomposition of wood in framing proximate to the fireplace, in a process known as ***pyrolysis***." Tidwell sought a declaration that Financial Pacific owed Tidwell a duty to defend the State Farm action and damages from Financial Pacific for the insurer's breach of its duty to defend.

In September 2014, Financial Pacific moved for summary judgment on the ground that the insurer "had no duty to defend or indemnify Tidwell in [the State Farm action] because Financial Pacific lacked any potential or actual coverage under its insurance policies for the claims asserted" in that action. In December 2014, the trial court granted that motion. In its ruling, the court found that "State Farm sought recovery for the fire which occurred November 11, 2011. The insurance policy at issue in this case lapsed March 1, 2010. . . . Plaintiffs may not assert alternative causes State Farm 'should have' alleged in order to create coverage issues." The formal order granting summary judgment was filed in January 2015, and the resulting judgment in favor of Financial Pacific was filed in February. Tidwell timely appealed from that judgment.

## DISCUSSION

"An insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277.) "[F]acts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy. [Citation.] This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 296.) "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." (*Id.* at pp. 299-300.) " '[T]he insurer need not defend if the third party complaint *can by no conceivable theory raise a*

7

*single issue which could bring it within the policy coverage*.' " (*Id.* at p. 300, quoting *Gray*, *supra*, 65 Cal.2d at p. 276, fn. 15.) Thus, to prevail on a motion for summary judgment premised on a claim that the insurer had no duty to defend, "the insurer . . . must present undisputed facts that eliminate any possibility of coverage." (*American States Ins. Co. v. Progressive Casualty Ins. Co.* (2009) 180 Cal.App.4th 18, 27.)

On appeal, Tidwell essentially contends that Financial Pacific did not eliminate any possibility of coverage in the State Farm action because the undisputed facts show that Financial Pacific was aware of evidence that the November 2011 fire for which State Farm sued Tidwell may have been "simply the culmination of an integrated process of continuing and progressive property damage . . . without which the House Fire would never have occurred" and some of that property damage could have occurred during the periods when Financial Pacific's policies were in effect. Financial Pacific, on the other hand, contends there was no possibility of coverage because State Farm sought to recover from Tidwell only "for the fire damage post-dating Financial Pacific's coverage" and not for any earlier damage that might have been done to the wood framing the chimney chase as a result of the pyrolysis process. As we will explain, we conclude Tidwell has the better argument. Even though State Farm did not seek to recover from Tidwell damages directly attributable to physical injury to the Fox house that predated the November 2011 fire, there was a possibility that the damages State Farm *did* seek to recover occurred *because of* earlier physical injury to the house for which Tidwell was responsible, and thus there was a possibility that the damages State Farm sought fell within the coverage provided by the terms of the general liability policies Financial Pacific issued to Tidwell. Because there was a potential for liability under the policies, Financial Pacific owed Tidwell a duty of defense.

We reach this conclusion via a straightforward application of the applicable policy provisions. It is undisputed that under the policies at issue here, Financial Pacific agreed to pay sums that Tidwell became "legally obligated to pay as damages because of . . .

8

'property damage' " caused by an "occurrence" if the "property damage" occurred during the policy period.  The policies defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies further defined "property damage" as "[p]hysical injury to tangible property, including or resulting in loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."

When the foregoing provisions are read together, it can be seen that Financial Pacific would be liable under the policies for any sums Tidwell became legally obligated to pay as damages because of physical injury to tangible property that:  (1) occurred during a policy period; and (2) was caused by continuous or repeated exposure to substantially the same general harmful conditions.  Thus, if Tidwell's negligence resulted in a repeated exposure of tangible property to substantially the same general harmful conditions (an occurrence), and that repeated exposure to those conditions resulted in physical injury to that property (property damage) during a policy period, and Tidwell became legally obligated to pay damages because of that negligence, then coverage would, at least potentially, exist under the Financial Pacific policies.

With this understanding of the policy language, it is apparent there was possibility of coverage here based on the allegations of State Farm's complaint and the facts known to Financial Pacific.  This is so because, based on the allegations and the known facts, there was reason to believe Tidwell might have negligently installed a custom top on the chimney in the Fox house that restricted the flow of air in the chimney, which in turn might have resulted in excessive heat in the chimney every time a fire was burned in the fireplace from the time the house was built, which in turn (through the process of pyrolysis) might have altered the chemical composition of the wood framing the chimney chase, thereby reducing the temperature at which it would ignite, until eventually, on November 11, 2011, the wood framing the chimney chase *did* ignite, which in turn resulted in the fire that damaged Fox's house, for which State Farm was obligated to

9

indemnify Fox as Fox's insurer. If that is what happened, then Financial Pacific would potentially be liable under its policies to pay any sums Tidwell became legally obligated to pay State Farm as damages because the repeated exposure of the wood framing the chimney chase to the excessive heat in the chimney, for which Tidwell was responsible, may have caused physical injury to the wood (by altering its chemical composition and reducing its ignition point) during one or more policy periods, and that physical injury would have caused Tidwell's legal obligation to pay damages for the fire that resulted (at least in part) from the damaged wood.

Of course, we need not and do not conclude that this *is* what happened; we conclude only that under the allegations of State Farm's complaint and the facts known to Financial Pacific this is what *might* have happened. And because this might have happened, there was a potential for liability under the policies, and Financial Pacific had a duty to defend.

Financial Pacific's contentions to the contrary are unavailing. To the extent Financial Pacific addresses the relevant policy provisions at all, the insurer's position is that "[t]he coverage grant of the . . . policies requires the damage at issue take place in the policy period" and here that did not happen because "State Farm's claim was based on damage sustained in the fire at the Fox home on November 11, 2011," after the last policy period ended. Thus, Financial Pacific argues that coverage is determined by the damage for which the third party sues the insured (in Financial Pacific's words, "the damage at issue") and whether that damage occurred during a policy period, and here State Farm did not sue Tidwell for the damage to the wood framing the chimney chase prior to the November 2011 fire but for the damage to the house resulting from the November 2011 fire. It is in connection with this point that Financial Pacific relies heavily on *Remmer v. Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 (*Remmer*) for the proposition that "it is the 'damage, injury, and cause of action' alleged [in the third party complaint] that controls the coverage determination."

10

Contrary to Financial Pacific's position, *Remmer* does not compel the conclusion that there was no potential for coverage here. In *Remmer*, the Remmers, who owned a lot uphill from a lot owned by the Morrises, graded and filled their lot in 1947. (*Remmer*, *supra*, 140 Cal.App.2d at p. 85.) At the time, the Remmers had a comprehensive personal liability insurance policy with Glen Falls Indemnity Company, which was later canceled in January 1948. (*Ibid.*) Four years later, in January 1952, "large quantities of earth and rock slid from the fill on [the Remmers'] property onto the property of the Morrises." (*Ibid.*) In April 1952, the Morrises sued the Remmers, alleging (among others not relevant here) a cause of action for nuisance. (*Id.* at p. 86.) The nuisance cause of action apparently characterized the fill that remained on the Remmers' property as a nuisance and sought an injunction, as well as damages for the diminution in the value of the Morrises' property from the continuing nuisance. (*Id.* at pp. 86-87.) The insurer rejected the Remmers' tender of the defense of the action. (*Id.* at p. 86.) Thereafter, the Morrises recovered a judgment for $2,000 against the Remmers for the diminution to the value of their property caused by the continuance of the nuisance. (*Id.* at p. 87.)

The Remmers then sued the insurer to recover the amount awarded to the Morrises, as well as their defense costs in the Morris action. (*Remmer*, *supra*, 140 Cal.App.2d at p. 87.) The trial court found in favor of the insurer, concluding that " '[t]he damage complained of was the present threat to, and depreciation of, the Morris land caused by the current maintenance of the balance of the rocks. This damage occurred after the policy was cancelled in 1948.' " (*Id.* at p. 88.) On appeal, the Remmers argued that "the action in *Morris v. Remmer* was for damages caused by a nuisance created in 1947, and, therefore, the 'occurrence' was created during the policy period." (*Ibid.*) The appellate court disagreed, noting that "[t]he general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." (*Ibid.*) The court further explained that while "the findings of fact in

11

*Morris v. Remmer* declare[d] that the nuisance was created by the fill of 1947, and was a continuing nuisance, and . . . it was by reason of this nuisance that the Morrises' property diminished in value," "this [wa]s not a complete or proper description of what was involved in the case of *Morris v. Remmer*. The pleadings in that action . . . demonstrate that the damage, injury and cause of action there alleged were for the maintenance and continuance of a nuisance at the time the action was filed, April of 1952. The action of *Morris v. Remmer* was for the maintenance and existence of that nuisance. That was the nuisance that constituted the 'occurrence' for which damages were allowed. This 'occurrence' was in 1952, and therefore not within the coverage." (*Id.* at pp. 88-89.) The court also went on to observe that "[t]he fact that the Morrises were suing for the present maintenance of a present nuisance is demonstrated not only by the allegations of the complaint, but also by the fact that in 1952 the Morrises could not have successfully sued for damages for the original creation of the nuisance in 1947, because such cause of action would have been barred by either the three or four-year statute of limitations." (*Id.* at p. 89.)

In relying on "the damage, injury and cause of action" alleged in the earlier action to determine there was no coverage, the *Remmer* court did not purport to state a rule that compels the conclusion there was no potential for coverage here. Even assuming *Remmer* can be reasonably understood as holding, as Financial Pacific claims, that "it is the 'damage, injury, and cause of action' alleged [in the third party complaint] that controls the coverage determination," application of that rule here would not eliminate all potential for coverage. As we have explained, State Farm sought to recover from Tidwell the amounts it was going to be liable to pay Fox because of the fire in November 2011. As Financial Pacific argues, that was the "damage, injury, and cause of action" alleged by State Farm. As we have also explained, however, it was possible that the November 2011 fire was caused by the repeated exposure of the wood framing the chimney chase to excessive heat resulting from a custom chimney cap installed by Tidwell, which altered

12

the chemical composition of the wood and reduced its ignition point until the wood finally ignited on the date of the fire. And as we have also explained, due to this possible causal relationship between what happened to the wood and Tidwell's potential legal obligation to pay damages to State Farm for the November 2011 fire, there was a potential for coverage under the language of Financial Pacific's policies because the excessive heat in the chimney, for which Tidwell may have been responsible, might have caused physical injury to the wood framing the chimney chase and that physical injury might have occurred during one or more policy periods, which would mean that physical injury during a policy period caused Tidwell's legal obligation to pay damages for the resulting fire, which would be sufficient to trigger coverage under the policy provisions at issue here. Under this scenario, the fact that the "damage, injury, and cause of action" State Farm alleged in its complaint against Tidwell was for a fire that occurred outside any policy period does not preclude the possibility of coverage because of the causal role that the degradation of the wood *during* one or more policy periods may have played in causing the fire for which State Farm sought to recover damages. The decision in *Remmer* does not compel a contrary conclusion.

To the extent Financial Pacific attempts to refute the foregoing reasoning by citing *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, for the proposition that "[a] cause of damage is insufficient to create a potential for covered damage," we do not find any such proposition in that case. What the Supreme Court explained there was that, for purposes of triggering coverage, there is a distinction between the "occurrence" and the resulting "bodily injury or property damage," and it is the latter, not the former, that must occur during the policy period for coverage to exist. (*Ibid.*) This distinction between "the causative event -- an accident or 'continuous and repeated exposure to conditions' -- and the resulting 'bodily injury or property damage' " (*ibid.*) is entirely unremarkable and does not refute the reasoning set forth above. Here, an initial causative event constituting an "occurrence" -- namely, the repeated exposure of the wood framing

13

the chimney chase to excessive heat in the chimney -- may have resulted in property damage over a period of years -- namely, the physical degradation of that wood -- which in turn may have led ultimately to the fire in November 2011.  It is true that the initial occurrence was, by itself, "insufficient to create a potential for covered damage," but there is nothing in the relevant policy language, or in the case on which Financial Pacific relies, to support the conclusion that the physical injury to the wood that resulted from this initial causal event could not itself have served as a further causal event in the chain of causation between Tidwell's negligence in installing the custom chimney top and the ultimate fire in November 2011 for which State Farm sought to recover damages from Tidwell.  Thus, contrary to Financial Pacific's assertion, a "cause of damage" *may be* sufficient "to create a potential for covered damage" if that "cause of damage" constituted physical injury to tangible property that occurred during a policy period, resulted from an "occurrence," and ultimately led to the insured's legal obligation to pay damages.

To the extent Financial Pacific attempts to call into question the validity of the pyrolysis theory -- whether by complaining that it "originated with Tidwell's own 'expert,' " pointing out that it was not specifically mentioned by Feb or O'Connor, or asserting that it is a "controversial" concept -- the insurer's arguments go nowhere because they do not eliminate all possibility of coverage.  To prevail on summary judgment based on the contention that pyrolysis could not be used to establish a potential for coverage under the policies, Financial Pacific would have had to establish as a matter of law on undisputed facts that pyrolysis is not a valid scientific theory and that, as such, it could not be used to establish that physical injury to tangible property occurred during a policy period.  The insurer did not do so.  Whatever aspersions Financial Pacific may seek to cast on the idea that the repeated exposure of wood to excessive heat can result in the physical degradation of that wood, those aspersions are not sufficient to eliminate *all*

14

possibility that pyrolysis is a valid theory and that it was operative here in causing the fire in November 2011.

To the extent Financial Pacific relies on *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533 (*Hurley*) and *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106 (*Gunderson*) for the proposition that an insured may not speculate about facts or theories to create a duty to defend, those authorities are of no moment here.  In *Hurley*, a contractor (Hurley) was sued by an insurer (Fireman's Fund) for participating in a conspiracy to engage in fraudulent billing practices.  (*Hurley*, at pp. 536-538.)  Hurley tendered the defense of that action to its liability insurer, State Farm.  (*Id.* at p. 537.)  State Farm denied coverage; Hurley sued for breach of the insurance contract.  (*Id.* at pp. 536-537.)  State Farm successfully moved for summary judgment, arguing that it had no duty to defendant because (among other things) "the Fireman's Fund complaint did not seek compensation for property damage or bodily injury." (*Id.* at pp. 537-538.)  On appeal, Hurley argued that even though Fireman's Fund's complaint showed no potential for coverage on its face, State Farm had a duty to defend because Fireman's Fund might have amended its complaint in the future such that the action would "become an action for property damage and bodily injury." (*Ibid.*)  The court rejected this argument because "[t]he extraneous 'facts' regarding potential liability came from Hurley's counsel who speculated about how Fireman's Fund might amend its complaint at some future date," and "the insured may not speculate about unpled third party claims to manufacture coverage." (*Id.* at p. 538.)

In *Gunderson*, a property owner (Ferrando) sued adjacent property owners (the Gundersons) to quiet title to real property, for declaratory relief, and for injunctive relief relating to an easement the Gundersons claimed over her property.  (*Gunderson v. Fire Ins. Exchange*, *supra*, 37 Cal.App.4th at p. 1110.)  The Gundersons tendered defense of the action to their homeowners liability insurer (Fire Insurance Exchange), but the insurer declined the tender because Ferrando's complaint contained no reference to a claim for

15

bodily injury or property damage.  (*Ibid.*)  After the Ferrando action settled, the Gundersons sued their insurer for breach of the insurance contract, but the insurer successfully moved for summary judgment on the ground that it had no duty to defend the Ferrando action.  (*Id.* at pp. 1111-1112.)  On appeal, the Gundersons argued the insurer had a duty to defend "because Ferrando *could* have made a claim for 'physical injury to or destruction of tangible property' in connection with [a] fence across a portion of the easement which [the Gundersons] removed at the outset of the dispute" over the easement.  (*Id.* at pp. 1113, 1115.)  The court rejected this argument because, among other things, "as in *Hurley . . . ,* Ferrando's complaint, on its face, alleged no facts showing a potential for coverage" and "[t]he extrinsic 'facts' regarding potential liability for property damage [came] from speculation about how Ferrando might have (but did not) amend her complaint at some future date.  Just as a third party complainant is not the arbiter of the coverage of an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage by speculating about unpled third party claims."  (*Id.* at p. 1117.)

*Hurley* and *Gunderson* both stand for the proposition that an insured cannot manufacture a duty to defend by speculating that the third party plaintiff might amend or could have amended its complaint to allege a claim for damages arising from bodily injury or property damage when the operative complaint did not contain any such claim.  That proposition has no bearing here.  The "speculation" Financial Pacific complains of here consists of the opinions of "Tidwell's own 'experts' . . . of what may have occurred" inside the walls of Fox's house, i.e., the pyrolysis damage to the wood framing the chimney chase from the excessive heat in the chimney.  But that is not the sort of speculation forbidden by *Hurley* and *Gunderson*.  In determining whether "a bare 'potential' or 'possibility' of coverage" exists, which is all that is necessary to trigger the duty to defend (*Montrose Chemical Corp. v. Superior Court*, *supra*, 6 Cal.4th at p. 300), neither *Hurley* nor *Gunderson* bars an insured from "speculating" about how its actions

16

may have led to the damages for which the insured is being sued by means of property damage that could have occurred during a policy period.

Stated another way, all Tidwell did here was offer a viable theory as to how the fire that damaged Fox's house, for which State Farm was suing Tidwell, might have been the result of physical injury to tangible property that occurred during one or more of Financial Pacific's policy periods and that resulted from an occurrence, thus potentially triggering coverage and, in turn, a duty to defend. Tidwell did not speculate that State Farm might plead some other claim against Tidwell that would potentially be covered by the Financial Pacific policies. Rather, Tidwell simply hypothesized how the claim that State Farm had *already* pleaded might be covered. Neither *Hurley* nor *Gunderson* precluded Tidwell from doing so.

To the extent Financial Pacific relies on three out-of-state decisions that have rejected the pyrolysis theory as a basis for establishing a duty to defend a lawsuit for a fire that postdated the applicable insurance coverage, we do not find any of those cases persuasive. In *Greenlee v. Sherman* (N.Y.App.Div. 1989) 536 N.Y.S.2d 877 (*Greenlee*), a furnace installer installed a furnace in the Greenlees' home in 1980. (*Id.* at p. 878.) After a fire destroyed their home in 1984, the Greenlees sued the executor of the estate of the furnace installer on the theory that "improper installment of the flue pipe from the furnace . . . resulted in the exposure of a wooden joist to intense radiant heat while the furnace was operating," which in turn "allegedly caused a chemical process, known as pyrolysis, in the wooden joist which ultimately lowered the ignition temperature of the wood the point where it was ignited by the flue pipe." (*Id.* at pp. 878-879.) In a related action, the furnace installer's liability insurer (Hanover) obtained a summary judgment declaring that it was not obligated to defend or indemnify the estate. (*Id.* at p. 879.) Based on policy language similar to that applicable here, Hanover contended that "since the fire occurred after the expiration of the policy period, the physical injury to the Greenlees' house for which they s[sought] damages . . . d[id] not constitute property

17

damage within the meaning of the policy." (*Id.* at p. 880.) The Greenlees contended that the policy "should be construed as requiring only that some physical injury occur during the policy period," and "since the wooden joist sustained some injury during the policy period due to the exposure to intense heat, there was an occurrence which triggered the policy's coverage, making Hanover liable for any and all subsequent related physical injury to the property, irrespective of whether the subsequent injury occurred during the policy period." (*Ibid.*)

On appeal, the court agreed with the insurer, explaining as follows: "Even if . . . there was an occurrence within the meaning of the policy due to the chemical decomposition of the wooden joist which occurred during the policy period, the policy cannot be construed as affording coverage for the subsequent physical injury to the remainder of the structure due to the fire which occurred after the expiration of the policy period. Pursuant to the terms of the policy, coverage is provided for 'property damage to which this insurance applies, caused by an occurrence'. Thus, there must not only be an occurrence, but also 'property damage to which this insurance applies', and it is clear from the definition of property damage that the physical injury to the property must occur during the policy period in order to be considered 'property damage to which this insurance applies'. . . . [T]he Greenlees seek . . . to recover damages due to the physical injury to their property caused by the fire, not damages due to the physical injury to the wooden joist caused during the policy period, and we agree that the injuries are separate and distinct for the purposes of determining coverage under the policy." (*Greenlee*, *supra*, 536 N.Y.S.2d at p. 880.)

In response to the Greenlees' contention that "the fire was merely the 'manifestation' of the continuing injury sustained during the policy period," the court concluded that "the record d[id] not support this claim. On the contrary, the expert evidence submitted on the motions establishes that both the continuing injury and the fire were caused by the presence of an intense radiant heat source in close proximity to the

18

wooden joist. Had the heat source been removed at any time prior to the fire, no further injury to the wooden joist would have occurred, and there would have been no fire, despite the chemical decomposition of the wooden joist allegedly caused during the policy period. On the other hand, with the heat source present, the fire eventually would have occurred, irrespective of whether the wooden joist had sustained some injury during the policy period. Accordingly, the fire was not the 'manifestation' of an injury sustained during the policy period, but the 'manifestation' of the condition created by [the installer]'s negligence during the policy period. Hanover's policy does not provide coverage for injury sustained after the expiration of the policy period as the result of a condition created during the policy period." (*Greenlee*, *supra*, 536 N.Y.S.2d at p. 881.)

We do not find *Greenlee* persuasive here. In concluding that the two injuries -- the damage to the wood from pyrolysis and the damage to the rest of the house from the fire -- were "separate and distinct for the purposes of determining coverage under the policy" (*Greenlee*, *supra*, 536 N.Y.S.2d at p. 880), the *Greenlee* court appears to have relied on the conclusion, based on expert evidence submitted in that case, that the earlier damage to the wooden joist was *not* a cause of the fire that ultimately destroyed the house because "the fire eventually would have occurred, irrespective of whether the wooden joist had sustained some injury during the policy period." (*Id.* at p. 881.) Under the facts before us, however, we are unable to reach the same conclusion. Here, it is at least possible that the *only* reason the fire occurred is because the repeated exposure of the wood framing the chimney chase to excessive heat in the chimney lowered the ignition point of that wood until the wood was able to ignite at the temperature routinely found in the chimney, which would have been insufficient to ignite wood that was *not* chemically altered by the pyrolysis process. Thus, contrary to the *Greenlee* court, we have essentially concluded that the two injuries -- the damage to the wood from pyrolysis and the damage to the rest of the house from the fire -- may *not* be "separate and distinct for the purposes of determining coverage under the policy" because of the possibility that the

earlier injury to the wood from the excessive heat was part of what caused the fire in November 2011.  For this reason, the decision in *Greenlee* that there was no coverage does not govern here.

In *Aetna Casualty and Surety Co. v. Naran* (Tex.Ct.App. 1999) 1999 WL 59782 (*Aetna Casualty*), the defendant's home, garage, and two cars were destroyed by a fire in July 1986 attributed to a catalytic converter installed on one of the cars by a franchisee of a company that had several general liability insurance policies issued by the plaintiff (Aetna) that terminated in June 1986.  (*Id.* at *1.)  The defendant (Naran) sued the franchisee and the franchisor (Village Imports) for negligence, and Village Imports tendered defense of the action to Aetna.  (*Ibid.*)  Aetna ultimately refused the tender, and Naran ended up recovering a judgment against Village Imports of almost $1.8 million. (*Id.* at *1-*2.)  As the judgment creditor, Naran filed suit against Aetna "seeking, among other things, a declaration that Aetna's policies covered his claim and that Aetna was therefore liable for the resulting judgment."  (*Id.* at *2.)  The trial court granted partial summary judgment to Naran and denied summary judgment to Aetna, concluding that Aetna was required to provide coverage under the policies.  (*Ibid.*)

On appeal, Aetna argued "there was no occurrence under the policies because property damage did not manifest itself until the fire and the fire occurred outside the policy periods.  On the other hand, Naran argue[d] that, even though the fire occurred after the policies expired, certain events occurred within the policy periods that triggered coverage under the policies and provide[d] coverage for the fire damage.  In particular, he contend[ed] that an accident or occurrence took place as early as March 1985, when Naran began to drive his Mercedes with the allegedly improperly installed catalytic converter.  Specifically, Naran refer[red] to a heating process known as pyrolysis.  Naran relied on affidavits from two expert witnesses who explained that as the heat from the catalytic converter removed the moisture from the car's carpet, the ignition temperature of the carpet was lowered until it was reduced to a point that the carpet ignited from the

20

heat of the catalytic converter. Both experts concluded that this heating process was a continuous process of damage to Mr. Naran's vehicle which ultimately resulted in the fire." (*Aetna Casualty*, *supra*, 1999 WL 59782, at \*3.)

The appellate court concluded coverage was not triggered by the repeated heating of the carpet by the catalytic converter. (*Aetna Casualty*, *supra*, 1999 WL 59782, at \*5.) The court explained that "[w]hile both of [Naran's] experts conclude[d] that pyrolysis was in itself property damage, their characterization of pyrolysis as a heating process that simply lowered the moisture content in the Mercedes carpeting belies this conclusion. There is no evidence in the record that this loss of moisture to the carpet in and of itself constituted property damage. In any event, Naran is not seeking recovery for the loss of moisture to his car's carpeting but for the damage caused by the fire. Regardless, even if we were to indulge Naran's argument that the pyrolysis does in fact constitute property damage, the record is absolutely devoid of any evidence that this property damage became apparent or manifested during the policy periods. Our review of the record reveals no discernable injury until the fire." (*Ibid.*)

Like *Greenlee*, *Aetna Casualty* is not persuasive here. First and foremost, the court in *Aetna Casualty* concluded that the case was controlled by the "manifestation" theory, under which "[l]iability arises under a policy only if property damage manifests itself or becomes apparent during the policy period." (*Aetna Casualty*, *supra*, 1999 WL 59782, at \*4.) In California, our Supreme Court has rejected application of the manifestation theory to standard comprehensive general liability policy language (like that at issue here) in third party cases where successive policies and continuous or progressively deteriorating losses are involved. (See *Montrose Chemical Corp. v. Admiral Ins. Co.*, *supra*, 10 Cal.4th at pp. 654-655.) Instead, the Supreme Court has adopted the "continuous injury" trigger of coverage in such cases, under which "bodily injury and property damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those

21

periods." (*Id.* at p. 655.) The court in *Aetna Casualty* specifically rejected application of the "continuous injury" trigger under Texas law. (*Aetna Casualty*, *supra*, 1999 WL 59782, at *4.)

Beyond that, we find no persuasive value in the *Aetna Casualty* court's conclusion that there was "no evidence in the record [in that case] that th[e] loss of moisture to the carpet in and of itself constituted property damage" or the court's observation that "[i]n any event, Naran [wa]s not seeking recovery for the loss of moisture to his car's carpeting but for the damage caused by the fire." (*Aetna Casualty*, *supra*, 1999 WL 59782, at *5.) On the first point, here we need not determine conclusively whether the repeated exposure of wood to excess heat can alter the chemical composition of the wood to such an extent that the result can be characterized as property damage (that is, physical injury to tangible property). Instead, it is enough for us to conclude that Financial Pacific failed to negate all *possibility* that it can be so characterized. As we have explained, for the duty to defend to exist, there only needs to be "a bare 'potential' or 'possibility' of coverage" (*Montrose Chemical Corp. v. Superior Court*, *supra*, 6 Cal.4th at p. 300), and to prevail on a motion for summary judgment on the duty to defend, Financial Pacific had to "present undisputed facts that eliminate[d] any possibility of coverage" (*American States Ins. Co. v. Progressive Casualty Ins. Co.*, *supra*, 180 Cal.App.4th at p. 27). Here, Financial Pacific did not present undisputed facts sufficient to eliminate the possibility that wood repeatedly exposed to excessive heat can be deemed physically injured because the change in the chemical composition of the wood lowers its ignition point far below what it would otherwise be. And on the second point, we point back to our previous analysis, where we have explained how the fact that the third party is seeking to recover for a fire that occurred outside the policy period does not necessarily preclude coverage where some earlier property damage that occurred *within* a policy period may have been a link in the causal change between the insured's negligence and the fire.

That leads us to the third and final out-of-state case, *Truck Ins. Exchange v. O'Mailia* (2015) 378 Mont. 231 [343 P.3d 1183] (*O'Mailia*). The facts in *O'Mailia* were similar to those in *Greenlee*, except that the fire in *O'Mailia* related to a water heater instead of a furnace. (*Id.* at p. 1184.) After the contractor who installed the water heater (O'Mailia) tendered defense of a lawsuit related to the fire to his liability insurer (Truck), Truck sought a declaration that the property damage resulting from the fire was not covered because the damage occurred after the policy was terminated. (*Id.* at pp. 1184-1185.) The trial court agreed and granted summary judgment to the insurer, "characterizing pyrolysis not as property damage, but as a condition that increased the risk of property damage." (*Id.* at p. 1186.) On appeal, the Montana Supreme Court agreed. The court first observed that under Montana law, "physical injury" to property is defined as "a physical and material alteration resulting in detriment." (*Ibid.*) The court then pointed out that "none of the investigators . . . claimed that the structure surrounding the water heater would have been significantly damaged or rendered unusable merely as a result of exposure to high temperatures. Pyrolysis was not itself the detriment suffered in this case . . . . At most, pyrolysis created a condition that increased the probability of a later physical injury." (*Id.* at p. 1187.) The court also concluded that "the assumption that pyrolysis occurred during the policy period is itself speculative, and thus insufficient to avoid summary judgment. . . . None of the experts . . . concluded or even suggested that harmful exposure to high temperatures occurred during the policy period." (*Ibid.*)

Like *Greenlee* and *Aetna Casualty*, *O'Mailia* is not persuasive here. First, the issue in *O'Mailia* was whether the fire was actually covered by the policy and in order to avoid summary judgment on that question the insured was required, but failed, to produce evidence that the wood that eventually ignited was exposed to the pyrolysis process during the policy period. Here, in contrast, the question was not whether there was coverage but whether there was *potential* coverage, and the burden was on the insurer, not the insured. Thus, the burden here was on Financial Pacific to prove by undisputed

23

facts that there was *no potential for coverage*. Financial Pacific did not meet that burden, because the insurer did not eliminate all possibility that the wood framing the chimney chase was repeatedly exposed to excessive heat during one or more policy periods.

Second, we are not persuaded by the Montana Supreme Court's conclusion that the pyrolysis process cannot be characterized as causing property damage to the wood that is exposed to excessive heat. One of the experts in *O'Mailia* explained that pyrolysis was, effectively, degradation of the wood, causing the wood to ultimately " 'ignite at a temperature much lower than its typical ignition temperature.' " (*O'Mailia*, *supra*, 343 P.3d at p. 1185.) If, as under Montana law, "physical injury" is "a physical and material alteration resulting in detriment," then it seems to us that the degradation of wood caused by repeated exposure to excessive heat, such that the wood will ignite at a temperature much lower than normal, meets that definition. The degradation of the wood by repeated exposure to high heat could readily be characterized as "a physical and material alteration" to the wood, and the lowering of the ignition point of the wood could easily be characterized as "detriment" resulting from the physical alteration to the wood.

In any event, for our purposes it is sufficient to conclude that Financial Pacific failed to eliminate all possibility that the repeated exposure of wood to excessive temperatures chemically alters the wood in such a way that the wood can be deemed physically injured (i.e., damaged) by that exposure. For this reason (and the other reasons stated in this opinion), Financial Pacific failed to eliminate all possibility of coverage, and the trial court erred in granting summary judgment to the insurer.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to vacate its order granting summary judgment and to enter a new order denying summary judgment. Tidwell shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

                                                  _____/s/_____

                                                  Robie, J.

We concur:

_____/s/_____
Nicholson, Acting P. J.

_____/s/_____
Hoch, J.