Filed 7/19/24  APR Construction v. Colony Insurance Company CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| APR CONSTRUCTION, INC. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COLONY INSURANCE COMPANY,<br><br>Defendant and Respondent. | D081146<br><br><br>(Super. Ct. No. 37-2019-00012784-CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.  Requests for judicial notice denied.

Adler Law Group and Erwin E. Adler for Plaintiffs and Appellants.

Sheppard, Mullen, Richter & Hampton, Todd E. Lundell, Peter H. Klee, Marc J. Feldman and Andrea S. Warren for Defendant and Respondent.

Appellants APR Construction, Inc. and Eric Scarbrough[1] (collectively APR) appeal from the trial court's grant of summary judgment in favor of Respondent Colony Insurance Company (Colony) in a multiparty insurance dispute.

APR entered into construction contracts with the San Diego Housing Commission (the Commission) regarding multiple rehabilitation and accessibility upgrade projects at different sites in San Diego. After purported problems with its ability to complete the projects as contracted, the Commission filed two lawsuits against APR in connection with these projects. In this separate action, APR alleges that Colony breached its contract with APR and acted in bad faith by not providing a defense to the Commission's lawsuits. APR also seeks a declaration that Colony continues to have a duty to defend it in the one lawsuit that remains pending,[2] and that as part of that duty to defend Colony is required to fund the prosecution of APR's affirmative cross-claims against the Commission.

Colony moved for summary judgment and set out a number of issues that it believed were ripe for adjudication, including (a) whether it owed a continuing duty to defend in the pending lawsuit, (b) whether Colony was required to fund APR's prosecution of its affirmative claims for relief against the Commission, given APR's assertion that those claims were intertwined with its defense, and (c) whether APR could demonstrate it was damaged by Colony's denial of a defense when it was provided a full defense by another

---

[1]   Eric Scarbrough is "part owner and President of APR Construction, Inc."

[2]   The other lawsuit settled before APR brought this action against Colony.

insurer.  The trial court agreed that Colony was entitled to a favorable adjudication as to each of these issues and that, as a result, APR could not succeed on any of its claims.  The court then entered judgment in favor of Colony.

On appeal, APR asserts that the trial court erred in reaching its conclusions in connection with the issues summarily adjudicated, and it sets forth at least three arguments for reversal, one of which has transformed over the course of briefing on appeal.  We conclude that APR has forfeited certain of these arguments by failing to raise them in the trial court and/or that its arguments are without merit.  We therefore affirm the judgment in favor of Colony.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Relevant Insurance Policies*

From March 2014 to March 2015, APR was insured under a commercial general liability policy issued by Colony (the Policy).  It provided property damage liability coverage, under which Colony agreed to (a) pay any sums APR became obligated to pay as damages "because of . . . 'property damage,' " and (b) defend APR in any suit seeking those damages.[3]  The Policy defined " 'property damage' " to means "a. Physical injury to tangible property,

---

[3]    The insuring language provides:

> "1.  Insuring Agreement [¶] a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . ."

3

including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." These provisions were to apply only if the "property damage" was caused by an "occurrence," which was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In addition, the Policy excluded coverage for any property damage caused by APR's own work. Specifically, Exclusion 2.j.(6) disclaimed coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Exclusion 2.m.(1) denied coverage for " '[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'." The policy defined " '[y]our work' " to mean "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."[4]

Upon expiration of the Colony Policy, APR obtained a commercial general liability insurance policy from HDI Global Specialty SE (HDI), which covered the period between March 2015 and March 2016.

B.  *The Underlying Lawsuits*

In April 2016, the Commission filed two lawsuits against APR arising out of construction contracts under which APR was to perform rehabilitation and accessibility upgrades at two separate public works projects. The two

---

[4]  " '[Y]our work" also included any "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work' . . . ."

4

actions based on the separate public works projects were referred to by the parties as the Two Sites Action and the Three Sites Action.

Both complaints alleged that in bidding the projects, APR made material misrepresentations about its financial capacity, resources available to devote to each project, qualifications, and workforce in order to induce to Commission to select APR's bids. The Commission claimed that as a result of those misrepresentations, APR was awarded the contracts, pursuant to which each project was to be completed within 120 days. APR was unable to meet the construction schedule, and at the end of the 120-day period had completed only 25 to 35 percent of each project. The Commission declared APR in default and terminated its right to proceed with the projects.

Although the complaints in the two lawsuits were substantially similar, there was at least one important difference. The complaint in the Two Sites Action alleged that APR left the two project sites with insulation exposed to the elements and with the roof open, which allegedly caused water damage to multiple units in the projects. In contrast, the Three Sites complaint, which remains pending, does not contain these or similar allegations of damage caused to other property as a result of APR's work.

In both lawsuits, the Commission asserted claims for (i) intentional misrepresentation, (ii) negligent misrepresentation, (iii) breach of contract, and (iv) declaratory relief seeking two determinations—whether the Commission had lawfully determined APR in default and terminated its right to proceed, and whether APR had breached the parties' agreement. In addition, the Three Sites complaint contains an additional claim against APR for bad faith.

In June 2016, APR filed cross-claims against the Commission in which it asserted claims for breach of contract and bad faith, as well as for three

5

types of tortious interference. In its cross-complaints, APR sought to recover damages for a broad range of harm, including losses APR suffered from the alleged disruption of its relationships with its vendors, suppliers, and sureties, and the added costs and expenses of its ongoing operations due to that disruption.

## C.   *The Two Sites Action Litigation and Settlement*

In late June 2016, APR tendered the Two Sites action to both HDI and Colony.  Colony denied coverage and declined to provide APR with a defense, but HDI retained defense counsel to defend APR.  APR also retained the services of independent counsel to pursue its cross-claims against the Commission.

In December 2018, a global settlement of the Two Sites action was negotiated among the Commission, HDI, and Allegheny Casualty Company, which was the surety for APR in connection with the Two Sites project. Allegheny, acting pursuant to a power of attorney granted by the surety contract with APR, approved the settlement agreement on APR's behalf. Colony did not participate in negotiating the global settlement.

APR initially objected to the global settlement of the Two Sites Action because the settlement required the dismissal of APR's cross-claims against the Commission.  Because APR had indicated its objection to the settlement, the Commission filed in the trial court a motion to enforce the settlement that had been entered into by the Commission, HDI, and Allegheny, acting on APR's behalf.

The day before the hearing on the Commission's motion to enforce the settlement, APR formally withdrew its objection.  APR's filing explained that it was withdrawing its objection to enforcement of the settlement because APR had "agreed to enter into the subject settlement agreement."  At the

6

hearing the next day, counsel for APR and Eric Scarbrough confirmed that APR had agreed to the global settlement.

At some point in time, Colony agreed to reimburse HDI for 50 percent of the costs that were incurred in defending APR in the Two Sites Action, and it agreed to pay 25 percent of the settlement amount due from HDI.

## D.   *The Three Sites Action Litigation*

APR tendered the Three Sites Action to Colony and HDI in late June 2016, as well.  The Colony Policy insured APR for nine days of work at the Three Sites project.[5]  Colony informed APR that its review of the Three Sites complaint revealed no potential for coverage under the Policy.

HDI, however, retained counsel to defend APR in the Three Sites Action.  HDI paid all of APR's defense costs in this matter through January 2020.  At that point, HDI and Colony entered into an agreement to apportion the defense costs between them, with Colony agreeing to pay 40 percent.

## E.   *APR's Initiation of the Current Lawsuit*

In December 2020, APR filed the current action against Colony, HDI, and Premier Claims Management, which is HDI's independent third-party claims adjuster.[6]

With respect to Colony, the complaint sets out three causes of action: breach of contract, bad faith, and declaratory relief.  In connection with the breach of contract and bad faith causes of action, APR asserts claims for recovery in connection with Colony's handling of both the Two Sites Action *and* Three Sites Action.  Specifically, APR alleges that Colony breached its

---

[5]   The construction contract for the Three Sites project was signed on March 11, 2015; the Policy expired on March 21, 2015.

[6]   The operative complaint is the third amended complaint.

7

contract and acted in bad faith by refusing to defend APR in both of the underlying lawsuits, participating with HDI in settling the Two Sites Action without informing APR, and agreeing to share defense costs with HDI in the Three Sites action without advising APR.

APR's declaratory relief cause of action relates solely to the Three Sites Action. It seeks a declaration "confirming that Colony has a duty to defend [APR] in the Three Sites Lawsuit," which it contends includes the duty to pay "the fees Plaintiffs have incurred and continue to incur in connection with its compulsory cross-complaint."

## F.  *Colony's Motion for Summary Judgment*

In April 2022, Colony moved for summary judgment. Colony argued it was entitled to judgment as a matter of law because (a) it has no contractual duty to fund the prosecution of an insured's cross-complaint; (b) APR is unable to establish that it was damaged by Colony's decision to deny a defense in both underlying actions because it was fully defended throughout both actions and continues to be defended in the still-pending Three Sites Action, and because it could not demonstrate damage resulting from the required dismissal of its cross-complaint arising out the settlement despite its "conspiracy" assertions because it ultimately agreed to the settlement; and (c) Colony owes no duty to defend APR in the Three Sites Action because that action does not involve even potentially covered claims. Colony further argued that because APR could not demonstrate bad faith or its entitlement to punitive damages, given its inability to demonstrate damages arising from the failure to provide a defense and or the potential for coverage in the Three Sites Action.

The trial court granted Colony's motion for summary judgment. It agreed that summary adjudication in favor of Colony was appropriate on the question whether the Policy required Colony to fund the *prosecution* of APR's cross-claims in the Two Sites and Three Sites Actions. The court rejected APR's assertion that it had been damaged as a result of incurring the fees spent on prosecuting APR's cross-complaint against the Commission, noting that "it is only an insured's increased exposure to *defense liability or costs of defense* that supports a finding of damages as a result of an insurers' duty to defend or liability under a breach of the covenant of good faith and fair dealing cause of action." Second, the court concluded that APR could not establish its claims for breach of contract or breach of the implied covenant of good faith and fair dealing. It reasoned that "because [APR was] fully defended in both the Two Sites Action and the Three Sites Action, [it] cannot establish damages as a result of Colony's alleged failure to defend."

Third, the court determined that Colony did not owe a duty to defend APR in the Three Sites action because the Commission's lawsuit in that action "does not seek damages for any physical damage caused by [APR]," which are the only damages that are covered under the Policy  To the extent the Three Sites complaint identifies defects in APR's own work, the Policy specifically excluded such defective workmanship from coverage. Finally, because of the court's other determinations established that APR's breach of contract and bad faith claims were without merit, APR's request for punitive damages also failed.

Because the undisputed facts demonstrated that APR could not succeed on any of its claims, the court entered judgment in favor of Colony on August 29, 2022.

9

## DISCUSSION

### A.  *Summary Judgment Standards*

The function of summary judgment "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Thus, a trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant who moves for summary judgment bears the initial burden to show the action has no merit—that is, "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action." (*Id.*, subds. (a), (p)(2).)  Once the defendant clears this initial hurdle, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact.  (*Aguilar*, at pp. 850–851.)

When a " 'case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716–717.)  " ' " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Id.* at p. 717.)

### B.  *APR's Appellate Contentions*

In addressing APR's arguments on appeal, we adopt an organizational structure for our opinion that differs somewhat from the presentation of the

arguments in the briefs. APR's complaint asserts various legal theories, but all concern Colony's responsibilities with respect to two separate pieces of litigation filed by the Commission. We start by addressing APR's contention that the trial court erred in granting summary adjudication in favor of the insurer as to the claims arising out of the Three Sites Action. As we will explain, summary adjudication was proper based on the fact that the Commission's complaint in that action did not seek relief for covered "property damage" within the meaning of the Policy. As to APR's claims arising out of the Two Sites Action,[7] we likewise conclude that summary adjudication was proper, albeit for different reasons.

## C. *Analysis*

### 1. *Colony is entitled to summary adjudication of APR's claims for relief regarding the Three-Sites Action, given that there is no coverage—and no potential for coverage—of the claims asserted in that lawsuit.*

APR's declaratory relief cause of action seeks a determination that Colony continues to have a duty to defend APR in the Three Sites action.

---

[7] One of APR's arguments as to the Two Sites Action asserts that the trial court "erred in granting summary judgment on APR's conspiracy claim" (boldface and some capitalization omitted), because an insurer who "dismisses its policyholder's cross-complaints to subsidize a settlement" "acts improperly and in bad faith." Although it refers to its contention as a "conspiracy claim," APR appears to be referring to its allegation that Colony breached the covenant of good faith and fair dealing by improperly negotiating a lower settlement by agreeing to the dismissal of APR's cross-complaint in the Two Sites Action. Although elsewhere in the record APR concedes that Colony was never involved in the global settlement discussions, APR nevertheless argues on appeal that Colony somehow induced *APR's surety* (Allegheny) to enter into the settlement negotiations, and that on this ground Colony may be held liable for bad faith. APR thus appears to use the phrase "conspiracy claim" to refer to its theory that Colony engaged in bad faith in connection with the Two Sites Action, alone.

11

The trial court granted summary adjudication on the declaratory relief cause of action, concluding that the undisputed facts demonstrate that "the Three Sites complaint does not seek damages for any physical damage caused by Plaintiffs," as would be required to trigger coverage. Our review of the complaint in the Three Sites Action demonstrates that there is no possibility of coverage under the Policy—a conclusion consistent with the trial court's determination of this issue.

An insurer's duty to defend is broad, in that an insurer is required to " ' "defend a suit which *potentially* seeks damages within the coverage of the policy." ' " (*Montrose Chem. Corp. v. Superior Ct.* (1993) 6 Cal.4th 287, 295; In other words, a liability insurer only owes a duty to defend against claims that "create[e] a potential for indemnity" under a policy. (*Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281, 1289.) Thus, " '[t]o prevail in an action seeking declaratory relief on the question of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish the *absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." [Citation.] The duty to defend exists if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." ' " (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.* (2018) 5 Cal.5th 216, 222.)

"[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 (*Waller*).) "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability. . . ."

12

(*Gunderson v. Fire Ins. Exch.* (1995) 37 Cal.App.4th 1106, 1114 (*Gunderson*).) An insured also " ' "may not speculate about unpled third party claims to manufacture coverage" ' [citation], and the insurer has no duty to defend where the potential for liability is ' "tenuous and farfetched." ' " (*Shanahan v. State Farm General Ins. Co.* (2011) 193 Cal.App.4th 780, 786.)

APR's policy with Colony provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." There is coverage only when the " 'property damage' " for which the insured is liable "is caused by an 'occurrence' that takes place in the 'coverage territory.' " Thus, to trigger Colony's duty to defend, the Commission's Three Sites complaint must allege, or extrinsic facts known to Colony must have demonstrated the possibility of, the existence of "property damage" that resulted from an "occurrence." " Property damage' " is defined in the policy as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." An " '[o]ccurrence' " is defined by the policy to "mean[a] *an accident*, including continuous or repeated exposure to substantially the same general harmful conditions." (Italics added.)

We first look to the Three Sites complaint to assess whether it alleges facts giving rise to the potential for coverage. (See *Waller*, *supra*, 11 Cal.4th at p. 19.) A review of that complaint makes clear that the Commission is *not* seeking damages from APR related to any "property damage" in the Three Sites Action. Not only is there no claim for damages from "property damage" asserted in the Three Sites complaint, but APR *concedes* the Commission has not alleged that APR caused *any* damage to property on which it was not working—in other words, there is no allegation that "property damage,"

13

as defined in the Policy, occurred at all.[8]  Instead, the Three Sites Action includes five causes of action—two sounding in fraud (intentional and negligent misrepresentation) and three sounding in contract (breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory relief regarding APR's alleged default under the construction contract and breach of the contract).  These claims for relief are based on allegations that APR failed to perform its contractual obligations in a timely manner, failed to pay its workers legally required wages, provided inaccurate and incorrect documentation during the project, gave false information about its progress and the basis for delays, and engaged in fraud in the bidding process.  None of these claims seek compensation for "property damage" within the meaning of the Policy, and none of the allegations even suggest or imply that any "property damage" occurred.

---

[8]     While the Three Sites complaint does include a paragraph in which it sets forth allegations that APR's *own work* was defective in certain ways, (i.e., "electrical work not performed in compliance with plans and specifications, installation of windows . . . not installed in accordance with the plans and industry standards, sites . . . not free of the debris of each day's work as required by the Agreement, and stairs manufactured incorrectly"), these allegations do not form the basis for a claim for damages, but merely provide context for the Commission's actual claims for relief.  Further, it is clear that even if these allegations themselves formed the basis for relief, such claims would not create the potential for coverage because coverage does not exist where the only damage alleged is the insured's defective construction damage, with no allegation of damage to *other* property. (See, e.g., *Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1393 (*Regional Steel*).)  APR concedes this point, as it does not rely on these allegations as a basis for demonstrating the potential for coverage and it expressly acknowledges that commercial general liability policies "do not cover the cost of remediating deficiencies in the contractor's own work," such that "if APR did any work deficiently, APR would have to bear the cost of repairing *its own work*."

In the trial court, APR conceded the Commission had not alleged "property damage" at any of the three projects at issue in the Three Sites Action. Instead, it relied exclusively on the fact that Colony had settled a dispute with HDI over funding APR's defense by agreeing to contribute funds to that defense. In APR's view, there was a fatal inconsistency "between [Colony's] non-coverage position which is being advanced against APR and its confidential Settlement Agreement with HDI in which Colony has agreed to continue to cover 40% of Three Sites Lawsuit defense costs." This fact alone, according to APR, was "sufficient to create a genuine issue of material fact" and defeat summary judgment.

In other words, APR did not dispute that the Three Sites complaint contains no allegations of any "property damage" occurring in connection with the projects at issue in that lawsuit. Nor did APR suggest its complaint could be construed as alleging Colony was aware of facts outside of the pleadings in the Three Sites Action that would have indicated a possibility of coverage for the claims asserted by the Commission in the Three Sites Action. Instead, it contended only that Colony's decision to settle a dispute with HDI over coverage and pay for some percentage of APR's defense in the Three Sites Action created a triable issue of fact.

But an insurer's business decision not to spend additional funds disputing coverage with another insurer is not evidence demonstrating that the potential for coverage actually exists. In fact, Colony's settlement with HDI specifically stated that it could *not* be "deemed, construed or treated in any respect as an admission of liability by any Party for any purpose whatsoever," and the agreement gave Colony the "right to withdraw from participation in the defense of the underlying Three Sites Action." As the trial court ruled, APR's reliance on Colony's decision to voluntarily pay HDI

15

for a portion of APR's defense in the Three Sites Action did not create a triable issue of fact as to whether Colony has a duty to defend based on a potential for coverage for claims seeking damages arising from "property damage."

Perhaps sensing the futility of the approach it took in the trial court, APR has abandoned that contention on appeal. Instead, it initially argued in its opening brief that Colony was not entitled to summary adjudication on APR's declaratory relief cause of action because certain allegations in the *Two Sites complaint* demonstrated the potential for coverage in the *Three Sites Action*. For example, APR asserted that "when the City served its Two Sites complaint, it alleged APR had caused water intrusion at the Two Sites *and* the Three Sites projects . . . ." (Italics added.) This, APR maintained, demonstrates that there remains the potential for coverage of the Commission's claims in the still-pending Three Sites Action.

As an initial matter, this is a new argument that was never presented to the trial court, and we may reject as forfeited a theory newly raised on appeal. " 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal.' " (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676; see *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698.) Therefore, " ' "*possible theories that were not fully developed or factually presented* to the trial court cannot create a 'triable issue' on appeal." [Citation.] "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' " (*Los Angeles Unified School District v. Torres Construction Corp.* (2020)

57 Cal.App.5th 480, 502–503 (*Torres Construction*); see also *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 873.)[9]

Moreover, this new theory has no merit. APR relies on the fact that the Two Sites complaint repeatedly refers to multiple "sites" as having suffered water damage to support its contention that the Two Sites complaint alleged water damage at both the Two Sites projects *and* the Three Sites projects. But the use of the plural term "sites" in the Two Sites complaint is a reference to the *two project sites at issue in the Two Sites Action*, as that is how the term is defined. Thus, there is no possibility that the Two Sites complaint is also referring to one or more of the projects at issue in the Three Sites Action. Obviously, allegations regarding completely separate projects that are not the subject of the Three Sites Action have no ability to create a material dispute as to whether Colony has a continuing duty to defend in the Three Sites Action. Indeed, APR concedes in its reply brief that this argument was based on an erroneous reading of the Two Sites complaint.

Still undeterred, APR's *reply* brief raises yet a third theory as to why summary adjudication of its claim for declaratory relief against Colony should not have been granted. It claims "the City's records and its contractor's testimony plainly identify a substantial amount of work as being deficient at the Three Sites project, i.e., 3919 Mason Street," and that "those deficiencies potentially involve numerous potential claims of property damage claims attributable to APR's work." APR's references to records and testimony regarding the Mason Street project are based on a request for

---

9    In reply, APR does not address *any* of the assertions of forfeiture raised by Colony in response to APR's opening brief and, in particular, does not contend that the normal rules of forfeiture should not apply to its newly raised theories.

17

judicial notice filed in this court regarding documents APR submitted in the trial court in connection with a summary judgment motion *filed by HDI*.

Even assuming we were to take judicial notice of these documents, however, APR's latest theory on why there might be the potential for coverage as to the Three Sites Action is forfeited based on its failure to make the argument in the trial court (see *Torres Construction*, *supra*, 57 Cal.App.5th at pp. 502–503) as well as because of the unfairness to Colony of raising it for the first time on reply (see, e.g., *L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 926, fn. 7).  And if we were to consider the contention on its merits, APR fails to convince us there is any genuine triable issue as to Colony's continuing duty to defend in the Three Sites Action.  First, any allegedly deficient work on APR's part at one of the sites involved in the Three Sites Action is not the basis for any of the actual claims for relief asserted against APR in the Three Sites complaint.  Again, the Commission *has not pled any claims seeking recovery of damages arising out of APR's alleged defective work*.  Rather, it is alleging damages as a result of APR's mischaracterizing its experience and ability to complete the contracted work, its failure to pay its workers as required by law, its inability to perform its contractual obligations in a timely manner, and its misrepresentations related to project progress and the basis for delays in the work being completed.  Moreover, even if the Commission were seeking recovery of damages from APR's defective work, such claims also would not themselves have the potential to trigger coverage, as they would relate to defective construction damage, not damage to other property.  (See, e.g., *Regional Steel, supra,* 226 Cal.App.4th at p. 1393.)  Thus, the Commission has not pled claims that the Policy even potentially covers.

APR's argument for coverage is really based on the contention that the Commission could *at some point in the future amend* its complaint to *add* a claim for "property damage" that may have occurred as a result of APR's allegedly defective work. This kind of speculation is insufficient to avoid summary judgment. "[A]n insured cannot manufacture a duty to defend by speculating that the third party plaintiff might amend or could have amended its complaint to allege a claim for damages arising from bodily injury or property damage when the operative complaint d[oes] not contain any such claim." (*Tidwell Enterprises, Inc. v. Financial Pacific Ins. Co., Inc.* (2016) 6 Cal.App.5th 100, 113 (*Tidwell*); see *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538; *Gunderson, supra*, 37 Cal.App.4th at p. 1117.) Rather, the potential for coverage is demonstrated by a showing that a "claim that [a third party] had *already* pleaded might be covered." (*Tidwell, supra*, 6 Cal.App.5th at p. 113.) Further, APR's assertion that the identified deficiencies "potentially involve numerous potential claims of property damage claims attributable to APR's work" offers nothing but conjecture. There is nothing in the Three Sites complaint, in the record in the Three Sites action, or elsewhere in the record in this case to suggest that the purported "deficiencies" in APR's work have resulted in any *other* property damage at any of the sites at issue, let alone that the Commission is seeking relief for such damage in the Three Sites Action.[10] Thus, APR's last-ditch argument fails to create a genuine disputed

10    In March 2023, APR requested that this court judicially notice a set of documents it asserts "were filed in the San Diego Superior Court in opposition to the motion for summary judgment filed by HDI Global Insurance in a related action involving appellants," and identifies the documents as a "Notice of Lodgment (limited to Exhibit N)" and a "Declaration of Vanessa Scarbrough." According to APR, the documents may be judicially noticed as records of a court in this state, pursuant to Evidence

19

issue as to whether the claims set forth in the Three Sites complaint could potentially be covered under the Policy.

Because APR has no ability to prevail on its assertion that the potential for coverage exists in connection with the Three Sites Action, APR is also unable to prevail on its breach of contract and bad faith claims that are premised on Colony's failure to defend (or even investigate) in response to APR's tender of the Three Sites Action. This is because, absent a duty to defend, there can be no meritorious claim for breach of contract *or* bad faith. (*Waller*, *supra*, 11 Cal.4th at p. 36 ["[I]f there is no *potential* for coverage and,

---

Code section 452. As a reviewing court, we "may take judicial notice of any matter specified in Section 452." (See Evid. Code, § 459, subd. (a).) However, APR's request for judicial notice is lacking any explanation as to exactly what the documents are and how they are relevant to the issues on appeal; such explanation is *required* of motions seeking judicial notice. (See Cal. Rules of Court, rule 8.252(a)(2)(A)(2) ["The motion must state: [¶] (A) *Why the matter to be noticed is relevant to the appeal.*" (Italics added.)].)

Further, we cannot discern their relevance. According to APR's briefing, at least one of the documents purports to "itemize numerous problems which potentially create a wide variety of property damage claims," in that it is a "construction report" by a contractor that includes notes about work being done at one of the Three Sites locations. However, even if we were to take judicial notice of the fact of the filing of the documents, we do not take judicial notice of the truth of the factual matters asserted in those documents. (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1090.) Further, even assuming that the connection between the documents and the argument APR seeks to advance could be made through the taking of judicial notice, as we have already explained, a duty to defend cannot be based on speculation as to how a third party might amend its complaint to allege relief that would be covered when the operative complaint does not contain such a claim. (*Tidwell*, *supra*, 6 Cal.App.5th at p. 113.) Given that these documents do not have the ability to create the possibility of coverage, they are not relevant to our consideration of this issue and we decline to take judicial notice. (See *Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075 (*Guarantee Forklift*) [an appellate court "may decline to take judicial notice of matters not relevant to dispositive issues on appeal"].)

hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."]; see *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1078 [an insurer's failure to investigate is not separately actionable if there is no coverage, because if there is no coverage, any failure to properly investigate would not have caused the insured to suffer damage].) Colony was therefore entitled to summary adjudication as to all of APR's claims based on its refusal to defend the Three Sites Action.

## 2. *APR cannot establish its claims for relief regarding the Two Sites Action because it cannot show that it suffered damages.*

In concluding that Colony was entitled to judgment as a matter of law on APR's claims arising from Colony's failure to defend it in the Two Sites Action, the trial court determined there was no dispute that APR suffered no damages as a result of Colony's failure to defend because it was otherwise fully defended in that lawsuit by HDI.

On appeal, APR seems to be arguing either that damages are not necessary to be proven because Colony's conduct constitutes a breach as a matter of law, *or* that damages may still be proven, despite the fact that APR was provided a full defense to the Commission's claims in the Two Sites Action. For example, APR contends that the trial court erred in summarily adjudicating APR's claim for breach of the implied covenant of good faith and fair dealing in connection with the Two Sites Action because it failed to acknowledge that Colony's *failure to investigate* the tendered claims, as opposed to its failure to provide a defense, constituted "bad faith toward APR" "as a matter of law." (Italics added.) Next, APR contends that the trial court erred in summarily adjudicating its claim for breach of the implied

21

covenant of good faith and fair dealing by failing to acknowledge its allegation that Colony conspired with the Commission, HDI, and APR's surety to dismiss APR's cross-claims against the Commission as part of the settlement of the Two Sites Action. According to APR, in the process of providing a defense HDI agreed to dismiss APR's cross-claims in order to settle the case, thereby damaging APR. And third, APR contends the trial court erred in ruling there were no damages because APR was entitled to have Colony pay for the costs of prosecuting its cross-claims as part of its "defense."

As we explain, APR's contentions fail to convince us that reversal is warranted.

     a. *Colony's failure to investigate APR's claim for coverage in connection with the Two Sites Action did not cause APR damages.*

APR cites *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819, and *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 220, to assert that Colony's failure to investigate the possibility of coverage for claims in the Two Sites Action constituted "bad faith toward APR" "*as a matter of law*" (italics added). It argues that because the failure to investigate constitutes a breach of the implied covenant of good faith and fair dealing as a matter of law, the trial court should not have summarily adjudicated its bad faith claim in favor of Colony. APR spends a good deal of its briefing discussing why the failure to investigate a claim constitutes a breach of the implied covenant of good faith and fair dealing, and seems to assume that the existence of a breach automatically leads to liability. However, what APR fails to acknowledge is that while it may be true that an insurer *breaches* the implied covenant of good faith and fair dealing by failing to investigate an insured's claim, a plaintiff must also still prove that the asserted breach proximately caused damage to the insured.

22

"An insurer's breach of the implied covenant of good faith and fair dealing 'will provide the basis for an action in tort.'" (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 314–315.)  As an action in tort, a claim for breach of the implied covenant of good faith and fair dealing includes the element of damages.  (*Id.* at p. 315 "[T]he measure of damages for tort actions applies [to bad faith claims], and the insurance company generally is liable for 'any damages which are the proximate result of that breach.'"]; see *Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 729.)  Further, to prevail on a bad faith claim, a plaintiff must present proof of actual economic loss.  (*Waters v. United Services Auto. Assn.* (1996) 41 Cal.App.4th 1063, 1078.)

As an initial matter, APR did not allege that it suffered any specific, independent harm as a result of Colony's alleged failure to investigate. Nor did it make any argument as to how it was harmed, separate from Colony's refusal to provide a defense, by Colony's failure to investigate the tendered Two Sites Action.  Instead, APR acknowledged in the trial court, through the declarations of Eric and Vanessa Scarbrough, that the only damaging outcome resulting from Colony's alleged failures was that Colony did not provide APR a defense.  APR maintains this same position on appeal, contending only that had Colony investigated its claims, it would have determined that the Policy covered the Commission's lawsuits, and accordingly provided APR with a defense.  Thus, the only possible economic harm that resulted from Colony's alleged failure to investigate are the costs associated with APR's defense.

The undisputed facts, however, demonstrate that APR was provided with a full defense in the Two Sites Action by another insurer—HDI. "An insured is entitled to only one full defense."  (*Safeco Ins. Co. of America v.*

*Parks* (2009) 170 Cal.App.4th 992, 1004.) An insurer that has allegedly breached its duty to defend may show that its insured suffered no damages from the breach by demonstrating that the insured received a full and complete defense. (*Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1094 (*Emerald Bay*); *Horace Mann Ins. Co. v. Barbara B.* (1998) 61 Cal.App.4th 158, 164.) Here, Colony submitted evidence that APR was fully defended in the Two Sites Action from the time APR tendered its claim to both of its insurers until the conclusion of the litigation pursuant to settlement because HDI paid all of APR's defense invoices. Indeed, APR does not dispute that HDI provided it a complete defense in the Two Sites Action.

> b. *APR cannot demonstrate that Colony or HDI caused APR harm by dismissing its cross-claims without APR's consent.*

Despite the fact that it concededly received a full defense in the Two Sites Action, APR attempts to create a triable issue of material fact by arguing that it did not receive a *beneficial* defense from HDI. According to APR's response to Colony's separate statement of undisputed facts, the defense HDI provided purportedly caused APR harm through the dismissal of its cross-claims for relief: "[I]n the process of providing their defense, HDI damaged [APR's] Cross-Claims by entering into a global settlement with San Diego Housing Commission *without obtaining* [*APR's*] *consent*. Thus, while on paper it appears that defense costs were paid, in reality the net result was significant damage to [APR]." (Italics added.)

24

On appeal, APR repeats its contention that it did *not consent* to the settlement with the Commission and that therefore it was damaged by the defense HDI provided. For example, APR asserts in appellate briefing that Colony has "misrepresent[ed] [that] APR voluntarily consented to the insurance carriers shifting the bulk of the settlement costs onto APR; Colony thus represents APR agreed to the insurers' dismissal of its cross-complaint," which, APR asserts, is an "unqualified misrepresentation." (Italics omitted.) In APR's view, the record citations to which Colony refers to support its factual assertion that APR consented to the settlement contain only "APR's statements to the court *acknowledging* the insurers had settled the Two Sites claim." Thus, according to APR, "Colony erroneously conflates and commingles two different concepts: (1) a **policyholder's acknowledgment** its insurance carriers had settled a claim; and (2) the insurance carriers' **failure to obtain their policyholder's consent** before using that policyholder's assets to subsidize a settlement."

The problem with APR's theory is that the record in the Two Sites Action does not match APR's description of what occurred. APR did not merely acknowledge that someone *other than* APR had settled the Two Sites Action. Rather, this evidence unequivocally demonstrates that APR itself *did in fact consent* to the global settlement terms, which included dismissing its cross-claims against the Commission, albeit after the other involved parties had reached that agreement. Documents from the Two Sites Action indicate that although APR did initially register opposition to a January 7, 2019 settlement reached by the Commission, HDI, and APR's surety, Allegheny, it later expressly agreed to the settlement. Prior to agreeing, however, APR disputed whether Allegheny had the authority to act on APR's behalf and at that point did not agree to the dismissal of its cross-claims.

25

When the Commission became aware of APR's opposition to the settlement, it filed a motion to enforce the settlement agreement. APR initially submitted a formal opposition to the Commission's motion. However, the documentary evidence from the Two Sites Action also demonstrates that the day before the March 22, 2019 hearing on the motion, APR filed a document in the trial court affirmatively withdrawing its opposition to the motion. In that document, APR stated it was withdrawing its opposition because it "*[had] agreed to enter into the subject settlement agreement.*"[11] (Italics added.)

The transcript of the hearing held on March 22 further confirms that APR consented to the full and complete settlement of the Two Sites Action, including the dismissal of its cross-claims. Indeed, counsel for APR repeatedly acknowledged that APR was agreeing to the full settlement of all claims in the action. For example, one of APR's attorneys began the hearing by stating, "We settled the case yesterday." When the court later asked to "hear from APR" as to whether the case was "settled," a different attorney representing APR responded, "[Y]es, the case is settled."[12] The attorney representing APR as to its cross-claims explained, "We are counsel for APR, at least with respect to the cross-complaint. We were substituted in . . . recently and we negotiated the settlement *and concluded the settlement* on behalf of our clients, APR and Mr. Scarbrough, yesterday." (Italics added.) In fact, Eric Scarbrough himself confirmed that the case had been settled. After hearing repeatedly that the case had been settled, the trial court sought

11    The document identified the agreeing "Defendants" as "APR Construction, Inc. and Eric Scarbrough."

12    Present on behalf of APR were both the attorney provided by HDI for its defense in the Two Sites Action and an attorney APR hired to represent it for purposes of litigating its cross-claims.

26

final clarification as to whether the settlement being referenced was the original settlement the Commission was seeking to enforce, or whether there was a new, different settlement. Attorneys for APR confirmed that APR was in agreement with the *original settlement*—i.e., the settlement under which both the Commission's *and APR's* claims would be dismissed.[13]

---

[13] In October 2023, APR filed a second request for judicial notice, this one made in conjunction with the filing of its reply brief. In this request, APR seeks judicial notice of a document titled "Tentative Rulings"— a document that appears to have been filed by the trial court in connection with the Commission's motion to enforce the settlement in the Two Sites Action—and asserts that the document is judicially noticeable as a record of a court of this state, pursuant to Evidence Code section 452. As with APR's other request for judicial notice, this motion is also devoid of any explanation as to how the document is relevant to the issues on appeal, and thereby fails to comport with the procedural requirements set out in the California Rules of Court. (See Cal. Rules of Court, rule 8.252(a)(2)(A) ["The motion must state: [¶] (A) *Why the matter to be noticed is relevant to the appeal*." (Italics added.)].) The failure to meet this procedural requirement provides a sufficient basis for denying the request.

More importantly, perhaps, the document itself reveals it is not relevant to our decision-making. Specifically, from the face of the document we can discern that it represents the trial court's *tentative* ruling, provided to the parties in connection with the Commission's motion to enforce the settlement. "[A] trial court's tentative ruling is not binding on the court; the court's final order supersedes the tentative ruling." (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300; see also Cal. Rules of Court, rule 3.1590.) Despite the fact that what it has proffered to this court is a tentative ruling, APR relies on this document to argue in its appellate briefing that the trial court actually ruled that APR's "consent was not necessary," from which APR implies that the trial court understood that it never gave its consent to the settlement. Absent some indication that a tentative ruling has been adopted as the court's final ruling, however, it cannot be relied on as the reasoning for the court's final decision and, accordingly, is not relevant to our determination of the issues on appeal. We therefore decline to take judicial notice. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 700, fn. 14.)

Thus, because APR consented to the dismissal of its cross-claims in the Two Sites Action, it cannot prevail on a claim for breach of contract or breach of the implied covenant of good faith and fair dealing based on damages it allegedly suffered as a result of those dismissals.

    c. *APR cannot establish that it was damaged on the theory that its "defense" should encompass the cost of prosecuting APR's cross-claims against the Commission in the Two Sites Action.*

Finally, APR asserts that the trial court erred in concluding that Colony was entitled to summary adjudication on the issue of whether it had a duty to pay for the costs of litigating APR's cross-claims against the Commission.[14]

As the trial court recognized, in general, an insurer has only a duty to provide a *defense* and is not obligated to fund an insured's affirmative claims for relief.  (See, e.g., *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1104 (*James 3*); *Emerald Bay, supra,* 130 Cal.App.4th at pp. 1095–1096 (*Emerald Bay*); *Barney v. Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966, 975; *Silva & Hill Constr. Co. v. Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 927.)  This is because insurance policies are contracts, and while a general commercial liability policy obligates the insurer to provide the insured with a defense to covered claims, absent a contractual provision obligating the insurer to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints, no such duty to

_____

14    Although APR contends that Colony had a duty to pay for the costs of prosecuting its claims in both the Two Sites Action and Three Sites Action, we limit our discussion of this question to considering Colony's duty in the Two Sites Action, since we have already concluded that the trial court properly determined APR was owed no defense (and thus could be owed no duty to pay for the costs of prosecuting its cross-claims) in connection with the Three Sites Action.

pursue affirmative relief exists. (*James 3, supra*, 91 Cal.App.4th at p. 1104.) Here, a review of the Policy demonstrates that it does not include a provision obligating Colony to fund and/or provide legal counsel to prosecute APR's affirmative claims against the Commission.

In the trial court, APR did not address these authorities head-on, choosing instead to argue that Colony was not entitled to summary adjudication of this issue as to the Two Sites Action because the question of Colony's duty to fund the prosecution of its cross-claims was moot, given that the case had been settled:

> "The settlement extinguished APR's cross-complaint. Therefore, it is no longer relevant whether Colony had a duty to prosecute APR's Cross-Complaint especially since Colony *did not participate in APR's defense.* The damage has already been done by HDI and the gist of the plaintiffs' complaint as it relates to Colony is based on interference with APR's rights under the Colony Policy and Colony's breach of its responsibilities and not with why Colony did not prosecute APR's Cross-Complaint. Based on these facts, [t]he issue is moot and not appropriate for summary adjudication when it comes to Colony."

This was the entirety of APR's argument on the question of Colony's duty to fund the prosecution of affirmative claims for relief. Now on appeal, however, APR yet again abandons the only argument it raised in the trial court and instead offers an entirely new theory as to why the trial court should not have summarily adjudicated the question whether Colony could be liable for breach of contract based on its failure to pay for the prosecution of APR's cross-claims against the Commission. APR's current contention is that the prosecution of its cross-claims was "affirmatively linked to [APR's] defense," and, therefore, the cost of that prosecution should have been borne by Colony. APR asserts that its cross-claims are the " 'mirror image' " of

29

the claims asserted by the Commission, and that *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38 (*Aerojet-General*) "requires insurance carriers to pay – as a 'defense cost' – their policyholder's prosecution expenses if those expenditures tend to reduce liability." According to APR, its cross-claims were doing " 'double duty,' " in that some of the issues to be litigated in those cross-claims could have minimized or eliminated APR's liability as to the Commission's claims.

As should be clear from this summary, APR never argued to the trial court that under *Aerojet-General*, an insurer has a duty to pay for the prosecution of affirmative claims for relief as defense costs. Indeed, we have found no mention of *Aerojet-General* or the other authorities on which APR relies, let alone the argument APR is making on appeal. And, again, APR does not address the issue of appellate forfeiture, and certainly does not articulate any reason why this court should now consider an argument never presented to the trial court. Thus, we once again observe that APR has forfeited its argument on appeal by failing to raise it in the trial court. (See *Torres Construction*, *supra*, 57 Cal.App.5th at pp. 502–503.)

Even if we were to consider the argument on its merits, however, we remain unconvinced. We begin by noting that *Aerojet-General*, *supra*, 17 Cal.4th at 38, did *not* involve the question whether insurers may be required to pay for prosecution of insureds' affirmative claims for relief. Rather, the Supreme Court was addressing only the question "whether *site investigation expenses*—broadly, expenses for determining the existence, nature, extent, effect, etc., of the discharge of hazardous substances at a location—may constitute defense costs that the insurer must incur in fulfilling its duty to defend." (17 Cal.4th at p. 45, italics added.) The *Aerojet-General* court held that an insurer may be responsible for paying for the cost of site

30

investigations, as part of providing a defense to the insured, but only where, among other things, "the site investigation . . . amount[s] to a reasonable and necessary effort to avoid or at least minimize liability." (*Id*. at p. 61.) The court reasoned that such costs should be borne by the insurer if they are "reasonable and necessary" to the defense, even if the investigation also provided a benefit to the insured, because "[e]ven if the insured may happen to derive some added benefit, the insurer does not shoulder any added burden." (*Id*. at p. 66.)

The *Aerojet-General* court's holding was narrow, and the court never indicated it was considering the more expansive proposition whether expenses arising from anything other than *site investigations* might be borne by an insurer. Thus, *Aerojet-General* does not purport to alter the general principle that an insurer is not obligated to take affirmative action to recover money for the insured through a cross-claim.[15]

APR argues, however, that where an insured's affirmative claims for relief are effectively the " 'mirror image' " of the claims being asserted against the insured, the cost of pursuing those affirmative claims for relief constitute "defense costs." It contends, for example, that APR and the Commission "[e]ach claimed [that] although it had complied with the contracts, the other had not." This means, so the argument goes, that the prosecution of APR's affirmative breach of contract claims "tend[ed] to reduce [APR's] liability," and should therefore be covered as defense costs. But critical to the holding in *Aerojet-General* was that the expense at issue be "reasonable and *necessary* to avoid or at least minimize liability." (*Aerojet-General, supra*, 17 Cal.4th at p. 67, italics added.) It is difficult to discern how the cost of prosecuting an

_____

15    Indeed, *James 3* and *Emerald Bay* were both issued *after* the decision in *Aerojet-Jet General*.

31

affirmative claim for relief, even one that might eliminate the insured's potential responsibility for paying damages, would be *necessary* to the insured's defense against the unsuccessful third-party claims where the insured has already been provided with a full defense against the third-party's action. So even if *Aerojet-General* may be read as APR contends regarding "mirror image" claims, it still does not extend so far as imposing on an insurer a duty to provide funds for an insured to pursue its affirmative claims for relief as a "defense cost" where, as here, the undisputed facts demonstrate that the insured has been provided a full defense. Any litigation work completed in connection with affirmative claims could not be considered "necessary" to the defense in such a scenario.

## DISPOSITION

The judgment of the trial court is affirmed. Colony is entitled to its costs on appeal.


DATO, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.